UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**MICHAEL JAMES KIRKPATRICK** and
**WINDY RENEE STONEBRAKER**,

Debtors.

Case No. **14-60878-13**

# MEMORANDUM of DECISION

At Butte in said District this 22nd day of December, 2014.

In this Chapter 13 bankruptcy, after due notice, a hearing was held November 4, 2014, in Billings on confirmation of Debtors' Chapter 13 Plan filed September 6, 2014, and on Debtors' Objection to Proof of Claim No. 3 filed by Susan Nicholson. Juliane E. Lore of Billings, Montana, appeared at the hearing on behalf of the Debtors and Rodd A. Hamman of Billings, Montana, appeared at the hearing on behalf of Susan Nicholson. The Chapter 13 Standing Trustee, Robert G. Drummond of Great Falls, Montana, also appeared at the hearing. Susan Nicholson and Heather Gallagher testified and Exhibits 1 through 5 were admitted into evidence.

BACKGROUND

Susan Nicholson ("Nicholson") and Debtor Michael Kirkpatrick ("Kirkpatrick") were formerly married, but their marriage was dissolved pursuant to a Final Decree of Dissolution of Marriage ("Decree of Dissolution") entered May 26, 1999. The Decree of Dissolution provided, in part, that Kirkpatrick was to provide medical care and health insurance for the children; Nicholson and Kirkpatrick would equally divide and pay any medical copayments and deductibles; and Kirkpatrick was to pay monthly child support of $275 per child. The child

1

support was to "be paid by way of income withholding through the Clerk of Court's office."

On September 10, 2008, Judge G. Todd Baugh of the Montana Thirteenth Judicial District Court, Yellowstone County entered a subsequent decision, stemming from Kirkpatrick's failure to honor his obligations under the Decree of Dissolution, giving Nicholson a $24,722 money judgment payable at $250 per month "plus ten percent (10%) per annum simple interest for any months that the monthly payment is not made." Judge Baugh explained in the aforementioned decision that Kirkpatrick had stopped paying his child support obligation in October 2004, but was current as of September 2008. However, as of September 10, 2008, Kirkpatrick owed Nicholson $15,422 in back health insurance premiums for the children. In addition, Nicholson had paid $4,300 in deductibles and uninsured health care for the children. While Kirkpatrick was originally only supposed to pay half of such amount, under Mont. Code Ann. ("MCA") § 40-5-822(4), Kirkpatrick was now obligated to pay the entire $4,300.[1] Finally, Judge Baugh awarded Nicholson an additional $5,000.00, explaining:

> Because Mr. Kirkpatrick stopped paying child support in October 2004, and did not pay again until a lump sum payment in December 2005, Ms. Nicholson was unable to maintain the payments on her student loan and lost the opportunity to have $10,000 in interest waived under the loan rehabilitation program. Mr. Kirkpatrick is as responsible as Ms. Nicholson for this lost opportunity. Mr. Kirkpatrick should pay $5,000 to Ms. Nicholson.

Consistent with the above decision, Judge Baugh entered a money judgment on

---

[1] MCA § 40-5-822(4) reads, in part:

An obligated parent who defaults on a medical support order by failing to obtain individual insurance or a health benefit plan or who permits the individual insurance or plan coverage to lapse without securing a comparable replacement is liable for all of the child's medical expenses and shall indemnify the other parent, the department, or the third-party custodian for the cost of obtaining health benefit coverage and for all medical expenses of the child.

September 10, 2008, which provided that Nicholson was entitled to recover from Kirkpatrick "the sum of $24,722 payable at $250 per month on or before the end of each month beginning with September 2008, bearing simple interest at ten percent (10%) per annum for any such months in which the monthly payment is not made and, further, the full balance, accrued interest and accruing interest at ten per cent [sic] (10%) simple per annum may be accelerated if the judgment debtor becomes in arrears by a total of four or more months."

On January 1, 2009, Nicholson sent Kirkpatrick a letter advising that Kirkpatrick had not made the September, October, November or December 2008 payments required by the decision and money judgment and that the total due on the judgment was $27,276.70. After failing to pay the foregoing amount or any monthly payments, Nicholson sent Kirkpatrick additional letters. As of October 1, 2009, Nicholson was advising Kirkpatrick that he had missed the last thirteen monthly payments. In November of 2010, Nicholson filed in the Montana Thirteenth Judicial District Court, Yellowstone County, an Affidavit of Sum Due, advising the state district court that Kirkpatrick owed the money judgment of $24,722 plus interest from September 30, 2008. Nicholson secured a writ and began garnishing Kirkpatrick's wages on or about December 13, 2010. Exhibit 6 prepared by Nicholson shows that as of December 13, 2010, Nicholson was owed the principal balance of $24,722 plus interest of $5,578.48. Nicholson received $15,925.67 through garnishment of Kirkpatrick's wages between December 10, 2010, and July 3, 2014.

Debtors filed a voluntary Chapter 13 bankruptcy petition on July 28, 2014. Debtors' schedules filed that same date list Nicholson as having a priority claim in the amount of $24,000.00. Debtors' Chapter 13 Plan filed July 28, 2014, provided for Nicholson's $24,000.00 domestic support obligation. Nicholson filed Proof of Claim No. 3 on August 7, 2014, claiming

3

she was owed a priority claim of $23,568.77 designated as "[d]omestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)" for "child support and medical care for children (Judgment)." Debtors filed an amended plan on September 6, 2014. Debtors' amended plan did not provide for any priority claims or domestic support obligations. On September 20, 2014, Debtors' objected to Nicholson's Proof of Claim.

In their objection, Debtors demanded an accounting of the debt owed because "the terms of the order indicate payments in the amount of $250.00 have been made at least, a total of $18,000.00." Debtors also requested that the Court disallow Nicholson's claim arguing that the claim is not in fact for child support or medical care for children, and that the "children are long grown, and [the September 2008] order was based on the reopening of a 1998 divorce case." Next, and in contradiction to the foregoing argument, Debtors argued that the money judgment was for "back health insurance premiums for the children," and that the debt was "not for medical bills, but insurance costs paid and later disputed and awarded as a monetary judgment, and the subjects were not children at the time of this claim." Debtors also objected to the $4,300.00 awarded by Judge Baugh to Nicholson arguing "it is a money judgment issued by the family court, rather than a support order or medical care for children, and the double award further is not in the support or medical care category that would entitle it to priority status." Finally, as to the $5,000.00 lost opportunity component of the claim, Debtors maintained that such claim was "facially not support or medical care for children that would entitle that portion of the claim to priority. The student loans subject to this speculative award entitled the plaintiff to further her own education, and this claim was in no way related to child support or medical care at all."

Nicholson, in response to Debtors' objection, filed a detailed transaction summary of her claim. *See* Exhibit 6. Nicholson also agreed at the hearing that her costs, together with the interest thereon, as reflected on Nicholson's original transaction summary, Exhibit 6, should be subtracted from her priority claim. Nicholson made such adjustments in an amended transaction summary filed November 6, 2014, which shows a balance due of $22,797.70.

Debtors also streamlined their objection at the hearing. Debtors continued to argue that Nicholson had inappropriately charged interest since the date of the money judgment, without cessation, which, Debtors argue, is contrary to the money judgment. Debtors also argued that $7,150.00 of Nicholson's claim did not qualify as a domestic support obligation. According to Debtors, Nicholson's claim should be allowed in the amount of $14,374.81, with $7,224.81 of that amount classified as a priority claim.

Post-hearing, Nicholson continues to maintain that her calculation of interest is proper. Nicholson also argues that Kirkpatrick's prepetition payments should be applied first to the $5,000.00 component of her claim. Nicholson contends a total of $2,098.88 has been paid on principal, leaving $2,901.12 remaining on the $5,000 debt, along with all the $15,422.00 for health insurance premiums and the $4,300.00. Nicholson concedes that $2,901.12 of her debt is for non-support and dischargeable under § 523(a)(15), while $19,895.88[2] remains as a domestic support obligation.

Debtors have not challenged Nicholson's calculations as set forth in either the original or

---

[2] This number is off by .70. Nicholson's amended transaction summary shows a total debt of $22,797.70. Subtracting $2,901.12 from the total claim leaves Nicholson with a priority claim of $19,896.58.

amended transaction table, and the Court will use those numbers here.[3] For the reasons discussed below, the Court finds that Nicholson is entitled to a claim of $22,797.70, of which $19,896.58 shall be treated as a priority claim.[4]

## APPLICABLE LAW and DISCUSSION

Nicholson filed Proof of Claim No. 3 on August 7, 2014, asserting a priority claim under 11 U.S.C. § 507(a)(1) in the amount of $23,568.77. Section 507(a)(1) grants priority status for "domestic support obligations," which term is defined at § 101(14A). In the case of a chapter 13 bankruptcy, a plan cannot be confirmed unless the chapter 13 debtor proposes a plan that pays all prepetition domestic support obligations in full by the end of the plan term. Additionally, chapter 13 debtors cannot receive a discharge of their debts until they certify that all amounts due under a domestic support obligation have, at the time of the certification, been paid. *See* 11 U.S.C. § 1328. In addition, the pre-petition domestic support obligations are excepted from a chapter 13 discharge. *See* 11 U.S.C. § 1328(a)(2). In contrast, pre-petition, non-support, divorce-related debts covered by § 523(a)(15) are not identified in § 1328(a)(2) as debts excepted from discharge, meaning they can be discharged in a chapter 13 case. While Nicholson did not grasp this nuance of the Bankruptcy Code prior to the hearing, she does now. Nicholson concedes in her post-hearing brief that $2,901.12 of her claim falls under § 523(a)(15) and that such amount

---

[3] The Court has done its own calculations and would have determined that the total debt still owing is $23,212.28, of which $3,490.28 would be for the lost opportunity debt, leaving a priority claim of $19,722.00. Because the differences are negligible, the Court will use Nicholson's calculations.

[4] Nicholson's amended transaction summary shows a debt of $22,797.70. If $2,901.12 of that is still remaining on the lost opportunity portion of Nicholson's debt, that leaves a priority claim of $19,896.58, not $19,895.88 as calculated by Nicholson.

"may be dischargeable after the completion of a plan which pays the non-dischargeable part of a claim that is priority support." The only matters still in dispute are Nicholson's interest calculation and whether the entire $4,300.00 of deductibles and uninsured health care for the children is in the nature of support.

I.      Whether Nicholson is entitled to her claimed interest.

Debtors argue that Nicholson's interest calculation "is in contradiction to the terms of the judgment itself," because the interest component of her claim was paid in full by March 18, 2013, and that at that time, Kirkpatrick was making monthly payments through wage garnishment. In opposition, Nicholson argues that "[u]nder MCA § 25-9-205, [she] is entitled to interest on [her] Judgment at the rate of 10% per year."

The Court agrees with Kirkpatrick that interest in this case is governed by Judge Baugh's decision and money judgment of September 10, 2008. However, the decision and money judgment must be read together, and not in isolation. The decision states that simple interest was payable "for any months that the monthly payment is not made." While Debtors appear to suggest that wage garnishment pursuant to a writ satisfies the monthly payment requirement of both the decision and money judgment, the Court need not decide that particular issue because the money judgment specifically provides that "the full balance, accrued interest and accruing interest at ten per cent (10%) simple per annum may be accelerated if the judgment debtor becomes in arrears by a total of four or more months." Kirkpatrick's payments were approximately 26 months in arrears when the wage garnishments started on December 13, 2010. Nicholson began advising Kirkpatrick in January of 2009 that the total judgment was due and owing. Under the plain language of the money judgment, once Kirkpatrick failed to make

7

payments for four months or more, he became liable for the "full balance, accrued interest and accruing interest at ten per cent (10%) simple per annum[.]" Pursuant to the money judgment, Nicholson is entitled to simple interest of ten percent per annum from September 10, 2008, to Debtors' petition date. Debtors' objection on this point is overruled.

II.     Whether $4,300.00 of Nicholson's claim is in the nature of support.

Debtors next argue that $2,150.00 of the September 10, 2008, money judgment does not qualify as a domestic support obligation. Under the Bankruptcy Code, a debt must satisfy the four requirements of 11 U.S.C. § 101(14A) to be considered a "domestic support obligation." Of the four elements set forth in § 101(14A), the parties here dispute only one—whether the entire $4,300 of the money judgment is "in the nature of alimony, maintenance, or support . . . without regard to whether such debt is expressly so designated." Whether an obligation is in the nature of support and thus qualifies as support under bankruptcy law is a question of federal law. *Friedkin v. Sternberg (In re Sternberg)*, 85 F.3d 1400, 1405 (9th Cir.1996), *overruled on other grounds, Murray v. Bammer ( In re Bammer)*, 131 F.3d 788, 792 (9th Cir.1997). Whether an obligation is in the nature of support requires the court to look to the "substance of the obligation." *Shaver v. Shaver*, 736 F.2d 1314, 1316 (9th Cir.1984).

Debtors summarily conclude that a portion of Nicholson's claim is not a domestic support obligation and then discuss a case in which this Court recognized that, absent a request for a hardship discharge or conversion to Chapter 7, a debtor could, under chapter 13 of the Bankruptcy Code, discharge a debt of a kind specified in § 523(a)(15). With respect to the deductibles and uninsured health care, Debtors argue on page 5 of their second brief filed at docket no. 50 that Nicholson's "portion was reallocated to the debtor as a penalty for his failure

to pay his own half prior to the judgment. Therefore, $2150 of this portion of the claim may be classified as priority debt that must be paid through the plan. The other $2150 may be dischargeable at the completion of this case." Debtors, however, fail to discuss in any fashion why this component of Nicholson's claim is not in the nature of alimony, maintenance or support.

Pursuant to the Decree of Dissolution dated May 26, 1999, Kirkpatrick was obligated to provide medical care and health insurance for the children. Kirkpatrick did not comply with that component of the Decree of Dissolution, causing Nicholson to incur $4,300.00 in deductibles and uninsured health care for her children. Under MCA § 40-5-822(4), Kirkpatrick, by defaulting on his medical support order, was required to indemnify Nicholson for "the cost of obtaining health benefit coverage and for all medical expenses of the[ir] child[ren]."[5] MCA § 40-5-822 deals specifically with family law, "enforcement of support" and the consequences to a parent for his or her failure to pay a medical expense obligation. Debtors argue that Nicholson's one-half of the $4,300.00 was assigned Kirkpatrick as a penalty. The Court disagrees. Kirkpatrick's obligation to indemnify Nicholson for her one-half was a statutory consequence stemming from his default. Absent Kirkpatrick's failure to prove one of the fact scenarios in MCA § 40-5-822(4)(a) through (c), Judge Baugh had no discretion to relieve Kirkpatrick of his liability for the entire $4,300.00. Judge Baugh did, however, have the discretion to impose a punishment or civil penalty under MCA § 40-5-821, which he did not do. The Court concludes that the entire $4,300.00 is in the nature of alimony, maintenance or support and, thus, is a domestic support obligation.

---

[5] A defaulting parent can be relieved of liability under § 40-5-822(4) by proving certain facts that apparently were not present in the case between Nicholson and Kirkpatrick.

Further, in discussing whether a debt is in the nature of support, the Ninth Circuit Court of Appeals explained:

> In determining whether an obligation is intended for support of a former spouse, the court must look beyond the language of the decree to the intent of the parties and to the substance of the obligation. *In re Maitlen*, 658 F.2d 466 (7 Cir.1981); *In re Vickers*, 24 B.R. 112, 114 (Bankr.M.D.Tenn.1982); *In re Ingram*, 5 B.R. 232, 234 (Bankr.N.D.Ga.1980); Comment, *Putative Spousal Support Rights and the Federal Bankruptcy Act*, 25 U.C.L.A.L.Rev. 96, 101 (1977). The courts that have considered this issue have used several factors to aid in the characterization of the debt. If an agreement fails to provide explicitly for spousal support, a court may presume that a so-called "property settlement" is intended for support when the circumstances of the case indicate that the recipient spouse needs support. *See Stout v. Prussel*, 691 F.2d 859, 861 (9 Cir.1982).Factors indicating that support is necessary include the presence of minor children and an imbalance in the relative income of the parties. *In re Woods*, 561 F.2d 27, 30 (7 Cir.1977). Similarly, if an obligation terminates on the death or remarriage of the recipient spouse, a court may be inclined to classify the agreement as one for support. *Id.*; *see also Matter of Albin,* 591 F.2d 94 (9 Cir.1979); *In re Ferradino*, 14 B.R. 196, 198 (Bankr.D.Nev.1981); *In re Ingram,* 5 B.R. 232, 235 (Bankr.N.D.Ga.1980). A property settlement would not be affected by the personal circumstances of the recipient spouse; thus, a change in those circumstances would not affect a true property settlement, although it would affect the need for support. The court will look also to nature and duration of the obligation to determine whether it is intended as support. Support payments tend to mirror the recipient spouse's need for support. Thus, such payments are generally made directly to the recipient spouse and are paid in installments over a substantial period of time. *Matter of Albin*, 591 F.2d 94, 97 (9 Cir.1979); *In re Smith*, 436 F.Supp. 469 (N.D.Ga.1977).

*Shaver v. Shaver (In re Shaver)*, 736 F.2d 1314, 1316-17 (9th Cir.1984). Judge Baugh's award of the entire $4,300.00 stemmed not from a property settlement agreement or a later proceeding to enforce a property settlement agreement. Rather, the award related solely to a support award and the subsequent enforcement of that award.

Under MCA § 28-1-1106, Nicholson applied Kirkpatrick's payments, totaling $15,925.67 between December 13, 2010, and July 3, 2014, first to interest and then to the principal balance owed on the $5,000.00 lost opportunity component of her claim. According to Nicholson,

interest totaled $13,826.79, which when subtracted from the $15,925.67, left $2,098.88 for payment toward the principal of the $5,000.00 lost opportunity component of the debt. As of Debtors' petition date, Kirkpatrick still owed $2,901.12 toward the lost opportunity part of the debt, which Nicholson concedes is not in the nature of support. However, for the reasons discussed above, the remainder of Nicholson's debt in the amount of $19,896.58 is in the nature of support and is thus a domestic support obligation that is entitled to priority treatment. In accordance with the above, the Court will enter a separate order providing as follows:

IT IS ORDERED that Debtors' Objection to Proof of Claim No. 3 filed by Susan Nicholson is overruled in part and sustained in part; and Proof of Claim No. 3 shall be allowed in the total amount of $22,797.70, of which $19,896.58 shall be treated as priority.

IT IS FURTHER ORDERED and NOTICE IS HEREBY GIVEN that a hearing on confirmation of Debtors' Amended Chapter 13 Plan filed November 16, 2014, at docket no. 49, shall be held **Tuesday, January 13, 2015, at 10:00 a.m.**, or as soon thereafter as the parties can be heard, in the BIGHORN COURTROOM, 5TH FLOOR ROOM 5503, JAMES F. BATTIN UNITED STATES COURTHOUSE, 2601 2ND AVENUE NORTH, BILLINGS, MONTANA; and any further amendments to Debtors' plan shall be filed on or before December 30, 2014.

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

11